# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

## Jackson Division

UPTON'S NATURALS CO.; and
THE PLANT BASED FOODS
ASSOCIATION,

    Plaintiffs,

vs.

PHIL BRYANT, in his official
capacity as Mississippi Governor; and
ANDY GIPSON, in his official
capacity as Mississippi Commissioner
of Agriculture and Commerce,

    Defendants.

Civil Action No. 3:19-cv-462-HTW-LRA

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Upton's Naturals Co. and the Plant Based Foods Association, by and through their undersigned counsel, hereby file this Complaint for Declaratory and Injunctive Relief and sue Mississippi Governor Phil Bryant and Mississippi Commissioner of Agriculture and Commerce Andy Gipson, in their respective official capacities, as follows:

## INTRODUCTION

1. This is a First Amendment challenge on behalf of sellers of clearly marked plant-based foods against Mississippi's recently passed law that bans the

sellers of plant-based foods from using the terms best-understood by consumers. These terms include, but are not limited to, "vegan burgers," "meatless hot dogs," "vegan bacon," "meatless meatballs," "vegan chorizo," and "meatless steaks." The ban serves only to create consumer confusion where none previously existed. The sellers are therefore challenging the ban in order to vindicate their First Amendment right to engage in non-misleading speech, so that they may continue to use the labels that are best understood by their customers.

## PARTIES

2. Plaintiff Upton's Naturals Co. ("Upton's Naturals") is an Illinois corporation that sells vegan foods in many states, including Mississippi, and is being harmed by the challenged law.

3. Plaintiff Plant Based Foods Association ("PBFA") is the national association of plant-based food manufacturers, ingredient suppliers, restaurants, and distributors. The Association consists of over 140 members, a substantial number of which sell plant-based foods in Mississippi and are being harmed by the challenged law. PBFA is a California nonprofit corporation.

4. Defendant Phil Bryant ("Governor Bryant") is the Governor of Mississippi. As Governor, he has direct authority over executive branch personnel and law enforcement officers charged with enforcing the challenged law. He is being sued only in his official capacity.

5.  Defendant Andy Gipson ("Commissioner Gipson") is the Mississippi Commissioner of Agriculture and Commerce. Commissioner Gipson has direct authority over the Mississippi Department of Agriculture and Commerce's personnel and is charged with the responsibility of enforcing the related laws, regulations, and policies. He is being sued only in his official capacity.

## JURISDICTION AND VENUE

6.  Plaintiffs bring this civil rights lawsuit pursuant to the First Amendment to the United States Constitution, the Fourteenth Amendment to the United States Constitution, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, for violations of the First and Fourteenth Amendments to the United States Constitution.

7.  Plaintiffs seek declaratory and injunctive relief against Mississippi's ban (the "Ban") that prohibits sellers of meat alternatives from using meat and meat product terms to describe their foods, even when done in an entirely non-misleading manner.

8.  This Court has subject-matter jurisdiction under 28 U.S.C. § 1331, as Plaintiffs' claim arises under federal law.

9.  Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(e)(1), as a substantial part of the events giving rise to Plaintiffs' claims occurred in this Court's District.

## STATEMENT OF ALLEGED FACTS

### The Plaintiffs and Their Labels

### Upton's Naturals

10. Plaintiff Upton's Naturals is located in Chicago, Illinois, and was founded upon vegan values in 2006 to sell a variety of entirely plant- and fruit-based foods.

11. Although Upton's Naturals is relatively small in size, its foods have become popular throughout much of the United States. Mississippi is among the many locations where Upton's Naturals sells its foods.

12. It is extremely important to Upton's Naturals that customers understand that its foods do not contain meat.

13. It would be a disaster for Upton's Naturals if the public were to think that the company had started selling meat.

14. Consequently, Upton's Naturals makes sure that its food labels are proudly marked as "vegan" and clearly state that the foods do not contain meat.

15. In order to describe the foods in the clearest possible manner, Upton's Naturals uses meat and meat product terms as part of the descriptions on its labels.

16. Upton's Naturals' foods are marketed to consumers who are looking for alternatives to meat-based products.

17. These terms include, but are not limited to, "burgers," "bacon," and "chorizo."

18. Upton's Naturals' uses of these terms include, but are not limited to, "vegan burgers," "vegan bacon," and "vegan chorizo."

19. No reasonable consumer would be misled by the way Upton's Naturals uses these terms.

20. These terms, as used by Upton's Naturals, increase consumer understanding of the foods' characteristics and communicate how the foods should be prepared and eaten.

21. If these terms are removed from Upton's Naturals' labels, consumer understanding will decrease.

22. These terms are now banned in Mississippi.

23. If relief is not granted by this Court, the Ban will force Upton's Naturals to change its labels.

24. If relief is not granted by this Court, the Ban will harm Upton's Naturals' business.

25. If Upton's Naturals is forced to change its labels as a result of the Ban, consumer understanding will decrease.

PBFA

26. Plaintiff PBFA has over 140 members, all of whom sell plant-based foods.

27. Many of PBFA's members sell their foods in Mississippi.

28. It is extremely important to PBFA's members that their respective customers understand that their foods do not contain meat.

29. It would be a disaster for many of PBFA's members if the public were to think that they had started selling meat.

30. Consequently, PBFA's members clearly label their foods as "vegan," "meatless," "plant-based," or with a similar term that lets customers know that the foods do not contain meat. The labels also typically include additional words, phrases, and information to further show that the foods do not contain any meat.

31. In order to describe the foods to customers in the clearest possible manner, many of PBFA's members also use meat and meat-product terms as part of their labels.

32. The meat and meat-product terms used by PBFA's members include, but are not limited to, "hot dogs," "burgers," "bacon," "meatballs," "jerky," and "steaks."

33. The ways in which PBFA's members use these terms include "meatless hot dogs," "meatless burgers," "vegan bacon," "meatless meatballs," "vegan jerky," and "meatless steaks."

34. No reasonable consumer would be misled by these uses of these terms.

35. These terms increase consumer understanding of the foods' characteristics.

36. If these terms are removed from PBFA's members' labels, consumer understanding will decrease.

37. These terms are now banned in Mississippi.

38. If relief is not granted by this Court, the Ban will force many of PBFA's members to change their labels.

39. If relief is not granted by this Court, the Ban will harm many of PBFA's members' businesses.

40. If PBFA's members are forced to change their labels as a result of the Ban, consumer understanding will decrease.

### Mississippi already prohibits misleading commercial speech

41. Separate from the Ban, Mississippi already has laws that prohibit misleading commercial advertising (the "Consumer Protection Laws").

42. The Consumer Protection Laws include prohibitions on misleading labels.

43. The Consumer Protection Laws include Mississippi Code Section 75-24-5.

44. Plaintiffs are not challenging the Consumer Protection Laws.

45. Plaintiffs abide by the Consumer Protection Laws and will continue to do so.

<u>Powerful industry interests pushed for the Ban</u>

46. Prior to and during Mississippi's 2019 Legislative Session, powerful meat industry lobbying groups asked the Mississippi Legislature to make it more difficult for sellers of meat alternatives to compete with the meat industry.

47. The meat industry groups advocating in favor of the Ban included the North American Meat Association, the Mississippi Cattlemen's Association, and the Mississippi Farm Bureau.

48. Representatives from these groups publicly stated that the Ban was necessary in order to protect the meat industry from competition.

49. For example, Mississippi Farm Bureau President Mike McCormick publicly stated that the Ban "will protect our cattle farmers from having to compete with products not harvested from an animal."

50. Representatives from these groups publicly stated that they did not want sellers of meat alternatives to reduce meat sellers' revenues the way sellers of almond milk and soy milk have reduced dairy revenues.

51. Representatives from these groups publicly stated that the Ban would achieve these protectionist goals by prohibiting sellers of meat alternatives from using meat terms and meat product terms to describe their foods on their labels.

52. Representatives from these groups publicly stated that anyone who sells food that did not come from an animal should be banned from using meat and meat product terms, regardless of the context.

53. For example, the Mississippi Cattlemen's Association's Executive Vice President Andy Berry publicly stated on the Super Talk Mississippi radio show that one of the reasons for the Ban was to address the "plant based" products that "are out there right now, you can go to probably a grocery store here in the metro and pick up," after which the radio host and Berry discussed plant-based burgers as an example.

54. Mississippi state legislators agreed with the meat industry groups and their lobbyists.

55. Mississippi state legislators publicly stated that these protectionist reasons given by the meat industry groups necessitated the Ban.

56. Mississippi state legislators publicly stated that they were banning sellers of meat alternatives from using meat terms and meat product terms because the meat industry groups had asked them to.

57. For example, Bill Pigott, a member of the Mississippi House of Representatives, stated that he introduced the Ban bill after he was contacted by an association of cattle ranchers.

### The Mississippi Legislature passed the Ban

58. As a direct result of the lobbying efforts made by meat industry groups, the Mississippi Legislature passed the Ban during its 2019 Legislative Session.

59. The Ban was passed as part of Senate Bill 2922.

60. The Ban was signed into law by Governor Bryant.

61. The Ban took effect July 1, 2019.

62. The Ban is now part of Mississippi Code Section 75-35-15.

63. The Ban expressly prohibits any plant-based food from being labeled as a "meat" or a "meat food product."

64. "Meat" and "meat food product" are defined terms.

65. For the purposes of the Ban, "meat" includes, but is not limited to, "the carcasses or parts thereof, of cattle, sheep, goats, other ruminants."

66. For the purposes of the Ban, the term "meat food product" includes, but is not limited to, hamburgers, hot dogs, sausages, jerky, and meatballs.

67. For the purposes of the Ban, the term "meat food product" does not include poultry products.

68. For the purposes of the Ban, beef is a type of meat.

69. For the purposes of the Ban, ham is a type of meat.

70. For the purposes of the Ban, hamburgers are meat food products.

71. For the purposes of the Ban, hot dogs are meat food products.

72. For the purposes of the Ban, meatballs are meat food products.

73. For the purposes of the Ban, jerky is a meat food product.

74. For the purposes of the Ban, sausages are meat food products.

75. For the purposes of the Ban, chorizo is a meat food product.

76. For the purposes of the Ban, steaks are meat food products.

77. For the purposes of the Ban, bacon is a meat food product.

78. For the purposes of the ban, corned beef is a meat food product.

79. The Ban is unequivocal in its requirement that plant-based foods cannot be labeled as these products.

80. The Ban provides no exception for the context in which the terms are used.

81. The Ban provides no exception for using these terms in conjunction with qualifying terms like "meatless," "vegan," or "plant-based."

82. The Ban prohibits meatless foods that are entirely plant-based from being labeled as "meatless beef."

83. The Ban prohibits meatless foods that are entirely plant-based from being labeled as "meatless corned beef."

84. The Ban prohibits meatless foods that are entirely plant-based from being labeled as "meatless pork."

85. The Ban prohibits meatless foods that are entirely plant-based from being labeled as "vegan bacon."

86. The Ban prohibits meatless foods that are entirely plant-based from being labeled as "vegan burgers."

87. The Ban prohibits meatless foods that are entirely plant-based from being labeled as "vegan hot dogs."

88. The Ban prohibits meatless foods that are entirely plant-based from being labeled as "meatless meatballs."

89. The Ban prohibits meatless foods that are entirely plant-based from being labeled as "vegan jerky."

90. The Ban prohibits meatless foods that are entirely plant-based from being labeled as "vegan chorizo."

91. The Ban prohibits meatless foods that are entirely plant-based from being labeled as "meatless steaks."

92. Reasonable consumers are not misled by the manner in which Plaintiff Upton's Naturals uses terms like "vegan burgers," "vegan bacon," and "vegan chorizo" in context on its labels.

93. Reasonable consumers are not misled by the manner in which Plaintiff PBFA's members use similar terms in context on their labels.

94. When used by Plaintiff Upton's Naturals and Plaintiff PBFA's members in context on their labels, these terms provide useful information to reasonable consumers.

95. By prohibiting the use of these terms, the Ban increases consumer confusion.

96. By prohibiting the use of these terms, the Ban creates consumer confusion among reasonable consumers where none existed.

97. The Ban's requirements conflict with the common understanding of the consuming public.

98. Penalties for violating the Ban can include up to one year in prison per offense and fines of up to $1,000 per offense.

99. Mississippi Code Section 75-35-311 mandates "imprisonment for not more than one (1) year, or a fine of not more than one thousand dollars ($1,000.00), or both such imprisonment and fine" for violating the Ban.

100. The Ban is unreasonable, unnecessary, does not advance any legitimate government interest, and is not tailored to any legitimate government interest.

101. The Ban is more burdensome than numerous other alternatives, including but not limited to a requirement that sellers of plant-based foods use these terms in context so as to not mislead consumers, which they are already doing.

102. The Ban is a content-based regulation of speech.

103. The Ban is a speaker-based regulation of speech.

104. The Ban does not address any real problem in a meaningful way, but instead creates an artificial one.

105. The Ban is not in the public interest.

106. The Ban creates confusion and misleading speech where none previously existed.

107. The Ban has no positive impact on society.

108. Instead, the Ban harms society.

109. The Ban would fail any level of First Amendment scrutiny.

110. The Ban is causing irreparable harm to Plaintiffs and to the consuming public.

111. The Ban has already begun chilling Plaintiffs' speech.

112. The irreparable harm increases every day the Ban remains in effect.

113. Plaintiffs' foods are legal to sell in Mississippi.

114. If Plaintiffs' labels did not describe the foods using meat and meat food product terms, Plaintiffs' labels would not be in violation of Mississippi law.

115. But for the Ban, Plaintiffs' labels would not be in violation of Mississippi law.

116. But for the Ban, Plaintiffs' foods are legal to sell in Mississippi.

**INJURY TO PLAINTIFFS**

117. But for the Ban, Plaintiffs would be engaging in more speech in Mississippi.

118. The process of designing food labels is lengthy and cumbersome.

119. Even if Plaintiffs were to start redesigning their labels today, the process would not be complete in a timely manner.

120. If Plaintiffs were to redesign their labels to comply with the Ban, the resulting labels would be less clear to customers than Plaintiffs' current labels.

121. If Plaintiffs were to redesign their labels to comply with the Ban, Plaintiffs would incur ongoing extra expenses by being forced to use different labels in Mississippi than in other states.

122. The uncertainty caused by the Ban is interfering with Plaintiffs' ability to expand their activities in Mississippi.

123. The current chilling to Plaintiffs' speech will only continue to increase.

124. If Plaintiffs were allowed to use the terms prohibited by the Ban in a non-misleading way, they would continue to do so.

## CAUSE OF ACTION

<u>The Ban violates the Plaintiffs' right to free speech</u>

125. Plaintiffs reassert and reallege paragraphs 1 through 124 as if fully set forth therein.

126. According to the First Amendment to the United States Constitution, "Congress shall make no law . . . abridging the freedom of speech."

127. The First Amendment has been incorporated to apply to the states through the Fourteenth Amendment.

128. The terms on Plaintiffs' labels that are prohibited by the Ban are non-misleading speech about a lawful activity.

129. By banning honest, accurate, and non-misleading descriptions of Plaintiffs' products, the Ban has abridged Plaintiffs' freedom of speech and the freedom of speech of anyone else who would otherwise use the Banned terms in a similar and non-misleading way.

130. The Ban irreparably harms Plaintiffs by preventing Plaintiffs from engaging in non-misleading speech about lawful goods that Plaintiffs want to sell.

131. The Ban also irreparably harms consumers by denying them access to useful information about lawful goods in the marketplace.

132. The Ban keeps consumers under-informed and confused about what is actually being offered by the seller.

133. The Ban is a content-based regulation of speech; the Ban prohibits certain non-misleading uses of meat and meat-product terms while allowing other uses of those same terms.

134. The Ban is a speaker-based regulation of speech; the Ban prohibits certain speakers from using meat and meat-product terms in non-misleading ways while allowing other speakers to use those terms.

135. The Ban suppresses helpful, non-misleading speech about the sale of a lawful item.

136. The Ban is not reasonably related to preventing or correcting any misleading or deceptive speech.

137. The interests being furthered by the Ban are not legitimate, substantial, or compelling.

138. The Ban is not appropriately tailored to any government interest.

139. The Ban does not directly or materially advance any legitimate government interest.

140. The Ban is overly extensive and unduly burdensome.

141. Both on its face and as applied to Plaintiffs, the Ban violates Plaintiffs' right to free speech guaranteed by the First Amendment to the United States Constitution.

142. Unless Defendants are enjoined from enforcing the Ban, Plaintiffs will continue to suffer irreparable harm.

## REQUEST FOR RELIEF

Therefore, Plaintiffs respectfully request the following relief:

A. A declaratory judgment that, facially and as applied to Plaintiffs, the Ban violates the First and Fourteenth Amendments to the United States Constitution;

B. A preliminary injunction prohibiting Defendants and their agents from enforcing the Ban for the duration of this litigation;

C. A permanent injunction prohibiting Defendants and their agents from enforcing the Ban;

D. An award of nominal damages in the amount of One Dollar ($1.00);

E. An award of attorney's fees, costs, and expenses in this action; and

F. Any other legal or equitable relief to which Plaintiffs may show themselves to be justly entitled.

DATED: July 1, 2019.

Respectfully submitted,

  /s/ Aaron R. Rice
Aaron R. Rice (MS Bar No. 103892)
MISSISSIPPI JUSTICE INSTITUTE
520 George Street
Jackson, MS 39202
Tel.: (601) 969-1300
Fax: (601) 969-1600
Email: aaron.rice@msjustice.org

Justin M. Pearson (FL Bar No. 597791)*
INSTITUTE FOR JUSTICE
2 South Biscayne Boulevard, Suite 3180
Miami, FL 33131
Tel: (305) 721-1600
Fax: (305) 721-1600
Email: jpearson@ij.org

Paul M. Sherman (VA Bar No. 73410)*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: psherman@ij.org

*Pending admission *pro hac vice*

*Counsel for Plaintiffs*